UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANGELA S. ZYCH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CAUSE NO. 1:20-cv-00414-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Kilolo Kijakazi, Commissioner of Social Security,*[1] | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Angela S. Zych appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Zych applied for DIB and SSI in July 2018, alleging disability as of January 1, 2008, which she later amended to May 27, 2018.[2] (ECF 16 Administrative Record ("AR") 15, 43, 243, 250). Zych's claim was denied initially and upon reconsideration. (AR 111-12, 143-44). On January 21, 2020, administrative law judge ("ALJ") Kathleen Winters conducted an administrative hearing at which Zych, who was represented by counsel, and a vocational expert ("VE")

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

[2] Regardless of a claimant's claimed onset date, SSI is not payable until the month following the month in which a claimant files her SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Zych could be eligible to receive SSI is August 2018, given that she applied for SSI in July 2018.

testified. (AR 34-82). On May 1, 2020, the ALJ rendered an unfavorable decision to Zych, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (AR 15-28). The Appeals Council denied Zych's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Zych filed a complaint with this Court on November 17, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her opening brief, Zych contends that the ALJ's step-five finding is not supported by substantial evidence because she failed to identify a significant number of jobs that Zych could perform despite her impairments. (ECF 18 at 8). The Commissioner timely file a response brief in opposition to Zych's arguments. (ECF 19). Zych, however, failed to file a reply brief, and her time to do so has now passed. (ECF 17).

At the time of the ALJ's decision, Zych was thirty-five years old (AR 243), had a high school education with some special education classes (AR 314), and had past relevant work experience as a stocker and an electrical assembly inspector (AR 26).[3] In her application, Zych alleged disability due to a spinal fracture in May 2018, a knee injury, and "mental issues." (AR 313).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

---

[3] Zych also had work experience as a restaurant kitchen worker, a factory laborer, and a retail sales associate, but these jobs did not qualify as past relevant work. (*See* AR 26, 298).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

#### A.  The Law

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

3

clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work; and (5) whether she is incapable of performing any work in the national economy.[4] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On April 1, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-28). At step one, the ALJ concluded that Zych engaged in substantial gainful activity after her alleged onset day of May 27, 2018, through June 30, 2018. (AR 18). However, the ALJ further observed that there had been a continuous twelve-month period after Zych's alleged onset date in which Zych did not engage in substantial gainful activity. (*Id.*). Therefore, the ALJ continued the step-five inquiry for the period in which Zych did not engage

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

4

in substantial gainful activity. (*Id.*).

At step two, the ALJ found that Zych had the following severe impairments: degenerative disc disease status post T12 compression fracture, osteoarthritis of both knees, migraine headaches, obesity, and depression. (*Id.*). At step three, the ALJ concluded that Zych did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 19). Before proceeding to step four, the ALJ determined that the record did not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations that Zych alleged. (AR 22). The ALJ assigned Zych the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand or walk for a total of two hours out of an eight-hour workday and can sit for a total of six hours in an eight hour workday. She can frequently handle and finger; can occasionally climb stairs or ramps, or stoop; can never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. She is able to balance commensurate with performing the activities outline[d] herein. Work with a moderate level of noise. The claimant must avoid concentrated exposure to wetness, unprotected heights, and moving machinery. Work with an option to sit or stand, changing positions no more frequently than every thirty minutes, while remaining on task. Needs a wheeled walker to ambulate more than fifty feet. She can engage in work that can be learned in thirty days, or less, with simple routine tasks; she is able to remain on tasks in two-hour increments; and with occasional interaction with coworkers, and the general public.

(AR 21).

The ALJ found at step four that given the foregoing RFC, Zych could not perform any of her past relevant work. (AR 26). At step five, however, the ALJ concluded that Zych could perform a significant number of unskilled jobs in the national economy, including document prepper, sedentary exertional level, 18,000 jobs in the national economy; hand mounter, sedentary exertional level, 10,000 jobs in the national economy; and semi conductor bonder, sedentary exertional level, 13,000 jobs in the national economy. (AR 27). Therefore, Zych's

5

applications for DIB and SSI were denied. (AR 28).

### C. The ALJ's Step-Five Determination

In her sole argument on appeal, Zych challenges the ALJ's step-five determination. (ECF 18 at 9-15). As already explained, a plaintiff seeking DIB and SSI bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At this final step, the Commissioner must establish that the plaintiff's RFC allows her to engage in work found in "significant numbers" in the national economy. *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009); *see* 20 C.F.R. §§ 404.1566, 416.966.

Zych argues that the ALJ failed to carry her burden to identify a significant number of jobs in the national economy that she is capable of performing despite the limitations caused by her impairments. (ECF 18 at 11-14). The ALJ concluded at step five that Zych was not disabled based on the VE's testimony that a hypothetical individual of Zych's age, education, work experience, and RFC could still perform a significant number of jobs in the national economy. (AR 27-28). Specifically, the VE testified that such individual could perform the following representative jobs: document preparer, 18,000 jobs in the national economy; hand mounter, 10,000 jobs in the national economy; and semi conductor bonder, 13,000 jobs in the national economy. (AR 71-72; *see also* AR 27). Zych contends that the ALJ failed to carry her step-five burden because the total number of representative jobs cited by the VE—41,000 jobs nationally—accounts for just .026% of the 155,592,000 total jobs in the national economy. (ECF 18 at 12-13 (citing *Sally S. v. Berryhill*, No. 2:18cv460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019)).

"The Seventh Circuit [Court of Appeals] has not affirmatively established the threshold for the number of jobs in the national economy that qualifies as significant." *John C. v. Saul*, No. 4:19-cv-04111-SLD-JEH, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021). In *Weatherbee v. Astrue*, the Seventh Circuit found that 140,000 representative jobs in the national economy was "well above the threshold for significance," yet did not definitively identify an actual threshold. 649 F.3d 565, 572 (7th Cir. 2011); *see also Angela L. v. Saul*, No. 1:20-cv-00481-SEB-DML, 2021 WL 2843207, at *5 (S.D. Ind. July 7, 2021); *John C.*, 2021 WL 794780, at *5. In *Primm v. Saul*, the Seventh Circuit found that 110,000 jobs in the national economy was a significant number. 789 F. App'x 539, 546 (7th Cir. 2019). Also, in *Collins v. Berryhill*, the Seventh Circuit found that just 55,000 jobs was a significant number of jobs nationally. 743 F. App'x 21, 25-26 (7th Cir. 2018).

But the *Primm* court relied on *Liskowitz*, a case involving regional, rather than national, numbers. *Primm*, 789 F. App'x at 546; *see Liskowitz*, 559 F.3d at 743 (finding that 4,000 jobs in the Milwaukee area was a significant number, and commenting that "it appears to be well-established that 1,000 jobs is a significant number" (collecting cases)). The *Collins* court, indirectly, did as well. 743 F. App'x at 25-26 (relying on *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016), which in turn relied on *Liskowitz*). At least one judge in this judicial circuit has indicated that "reliance on *Liskowitz*'s regional threshold is . . . suspect (and, by extension, so is the reliance on *Primm*)" when considering a claimant's argument challenging the number of national jobs identified. *James A. v. Saul*, 471 F. Supp. 3d 856, 859-60 (N.D. Ind. July 10, 2020). Therefore, while *Primm* and *Collins* provide some guidance, they are not without their vulnerabilities.

7

"[D]istrict courts within the circuit—applying national numbers—have found as many as 120,350 jobs to not meet the burden, and as few as 17,700 jobs to be significant." *Angela L.*, 2021 WL 2843207, at *5 (citing *John C.*, 2021 WL 794780, at *5); *compare Sally S.*, 2019 WL 3335033, at *11 (120,350 jobs nationally is not a significant number), *with Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs nationally is a significant number). Thus, this circuit lacks clear guidance on what constitutes a "significant number" of jobs in the national economy. *See Sundsmo v. Saul*, No. 20-cv-100-wmc, 2020 WL 6817112, at *7 (W.D. Wis. Nov. 20, 2020) (concluding 67,327 jobs nationally was a significant number, observing that "this court has no ready guidance, other than to note that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant capable of full-time work appears consistent with decades of case law and the applicable regulations . . . ."); *see also Ellis v Kijakazi*, No. 20-CV-719, 2021 WL 3514701, at *5 (E.D. Wis. Aug. 9, 2021) (observing the "lack of clarity from the Seventh Circuit regarding . . . 'significant numbers'" when concluding that 14,500 nationally was not a significant number).

The undersigned Magistrate Judge faced a similar argument earlier this year in *Knapp v. Saul*, No. 1:20-cv-00011-PPS-SLC, 2021 WL 536121, at *4-5 (N.D. Ind. Jan. 27, 2021), *R. & R. adopted by* 2021 WL 536483 (N.D. Ind. Feb. 12, 2021). There, I rejected the claimant's argument that 120,000 jobs nationally was not a significant number. *Id.* In doing so, I commented that "even when considering just the three jobs identified by the VE, the ALJ provided a sufficient number of jobs through his identification of 29,000 polishing machine operator jobs, 22,000 sorting machine operator jobs, and 16,500 wire insulator jobs." *Id.* at *4. Thus, at least in the facts presented in *Knapp* and under the law at the time, I viewed that 67,500

8

jobs in the national economy would still be a significant number of jobs. *Id.*; *see also Sundsmo*, 2020 WL 6817112, at *7 (finding that 67,327 jobs nationally was a significant number of jobs); *Angela L.*, 2021 WL 2843207, at *6 (finding that 53,200 jobs nationally was a significant number of jobs).

Here, though, the number of representative jobs cited by the ALJ is 41,000. In the absence of Seventh Circuit controlling precedent on the matter, district courts in this circuit have turned to other circuits for guidance. *See, e.g.*, *Wildenberg v. Kijakazi*, No. 20-cv-297-bbc, 2021 WL 4077498, at *7 (W.D. Wis. Sept. 8, 2021); *Ducharme v. Saul*, No. 20-cv-356-bbc, 2021 WL 1711787, at *5 (W.D. Wis. Apr. 30, 2021), *appeal docketed*, No. 21-2204 (7th Cir. June 28, 2021); *Marko L. v. Saul*, No. 16 C 9723, 2021 WL 843427, at *7 (N.D. Ill. Mar. 5, 2021). As the Commissioner emphasizes, the Third, Sixth, and Eighth Circuits have all found that much fewer than 41,000 jobs is a significant number of jobs in the national economy. (ECF 19 at 7); *see Sanchez v. Comm'r of Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017) (finding 18,000 jobs in the national economy significant); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding 6,000 jobs in the national economy significant); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy significant). Furthermore, several district courts in this circuit have found fewer than 41,000 jobs to be significant. *See, e.g.*, *Ducharme*, 2021 WL 1711787, at *5 (finding 31,000 jobs in the national economy significant); *Wildenberg*, 2021 WL 4077498, at *7 (finding 33,000 jobs in the national economy significant); *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *17 (N.D. Ill. Dec. 19, 2019) (finding 40,000 jobs in the national economy significant); *Iversen v. Berryhill*, No. 16 CV 7337, 2017 WL 1848478, at *5 (N.D. Ill. May 8, 2017) (finding 30,000 jobs in the national economy

9

significant).

Given the foregoing persuasive authority, and the lack of clarity in this circuit as to what constitutes a significant number of jobs, I conclude that 41,000 jobs in the national economy is a "significant number" of jobs for purposes of the ALJ's step-five determination in this case.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Zych.

SO ORDERED.

Entered this 16th day of November 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge